MISSOURI–ILLINOIS TRACTOR
& EQUIPMENT CO., Inc.,
Appellant,

v.

D & L CONSTRUCTION COMPANY &
ASSOCIATES and Continental Cas-
ualty Company, Appellees.

No. 17632.

United States Court of Appeals
Eighth Circuit.

Oct. 22, 1964.

R. Richard Straub, of Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., made argument for appellant and filed brief.

John A. Biersmith, of Rafter, Biersmith, Miller & Walsh, Kansas City, Mo., made argument for appellee and filed brief.

Before MATTHES, BLACKMUN and RIDGE, Circuit Judges.

BLACKMUN, Circuit Judge.

Is a Capehart payment bond suit brought by a subcontractor's supplier controlled by the limitation period set forth in § 2(b) of the Miller Act, 40 U.S.C. § 270b(b) ("[B]ut no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied" by the plaintiff), or, instead, by the period the bond itself specifies ("No suit or action shall be commenced hereunder by any claimant * * * [a]fter the expiration of one (1) year following the date on which Principal [the prime contractor] ceases work on the contract")? This is the issue presented by this appeal. It was the first issue resolved by the court below in its general opinion, Travis Equip. Co. v. D & L Constr. Co. & Associates, 224 F.Supp. 410, 411–417 (W.D.Mo. 1963), applicable not only to this but, as well, to a number of other cases. Koppers Co. v. Continental Cas. Co., 337 F. 2d 499 (8 Cir. 1964), which we also decide today, has to do with the second issue the district court considered, pp. 417– 418 of 224 F.Supp.

The claimant, Missouri-Illinois Tractor & Equipment Co., Inc., instituted the present action in federal court in June 1962. It asserted jurisdiction under the Capehart Act, 42 U.S.C. § 1594(a), under the general bond statute, 28 U.S.C. § 1352, and, perhaps somewhat significantly, under the very § 2(b) of the Miller Act quoted in part above. It is a suit to recover $9,478.46 for labor and material furnished by the plaintiff to W. S. Conner, a subcontractor on the Capehart project at Fort Leonard Wood, Missouri. The defendants are a joint venture, D & L Construction Company & Associates, the prime contractor, and Continental

Casualty Company, Inc., the surety on its two Capehart bonds.

The plaintiff's labor and material were all supplied more than one year prior to the institution of its action. The suit, however, was begun within the year following the date on which D & L, as prime contractor and as principal on the Capehart bonds, ceased work on its contract. The defense of the Miller Act's limitation period was affirmatively pleaded by the surety.

The situation, thus, is one where the suit is barred if the Miller Act controls but where it is not barred if the bonds' provision governs. The district court held that it was the Miller Act which was applicable. Pursuant to the suggestion contained in that opinion, p. 418 of 224 F.Supp., the defendants then moved for summary judgment. That motion was granted and judgment was entered in their favor. There is no genuine issue as to any material fact within the meaning of Rule 56(c), F.R.Civ.P.

We are told that the question comes to us as a matter of first impression at the appellate level. We note, however, that one other federal district court has reached the same result and did so upon the authority of Judge Oliver's opinion below. Economy Forms Corp. v. Trinity Universal Ins. Co., (D.N.D.1964, 234 F. Supp. 930).

Our approach to these Capehart-Miller cases has been outlined at length in recent opinions. Continental Cas. Co. v. United States for Use and Benefit of Robertson Lumber Co., 305 F.2d 794 (8 Cir. 1962), cert. denied 371 U.S. 922, 83 S.Ct. 290, 9 L.Ed.2d 231; D & L Constr. Co. v. Triangle Elec. Supply Co., 332 F. 2d 1009 (8 Cir. 1964); Continental Cas. Co. v. Allsop Lumber Co., 336 F.2d 445 (8 Cir. 1964); Koppers Co. v. Continental Cas. Co., supra, 337 F.2d 499 (8 Cir. 1964). We need not repeat here what has been said in those four cases. We observe only that we have decided, expressly or by implication, that the Miller Act does have general application to Capehart bonds except, of course, where the two statutes are clearly different, or where the Miller Act's provisions have no sensible application to a Capehart bond, or where a procedural aspect, such as a more stringent but not unreasonable notice provision in the bond than is present in the statute, is in issue.

The plaintiff argues that the entry of summary judgment for the defendants here is in conflict with our decision in Robertson; that it is also in conflict with recent decisions of other courts; and that the limitation provision in the Capehart bonds is procedural in nature and is controlling.

The first of these arguments is fully answered, so far as we are concerned, by what we said in Allsop and by what we have today repeated in Koppers, particularly our statement,

"If strict logic perforce demands a conclusion that this decision is but another way of saying that § 270b (b) of the Miller Act has application to a Capehart bond suit, we may be understood as going that far in our present holding";

by our listing of and reference, p. 452 of 336 F.2d, to the factors prompting our conclusion there; and by our statements, in both Allsop and Koppers, that Robertson must be read "in context and not out of it, and in the light of the issue and holding of that case" and "Robertson stands for what it holds, namely, that the notice provisions of a Capehart bond prevail over the less stringent notice provisions in the Miller Act."

The plaintiff's second point also is fully answered by our observations in Koppers relative to United States for Use and Benefit of Miles Lumber Co. v. Harrison & Grimshaw Constr. Co., 305 F.2d 363 (10 Cir. 1962), cert. denied 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229, and to the three state court decisions, Ireland's Lumber Yard v. Progressive Contractors, Inc., 122 N.W.2d 554, 556–561 (N.D. 1963); Allsop Lumber Co. v. Continental Cas. Co., 73 N.M. 64, 385 P.2d 625, 628–629 (1963), and Minneapolis-Honeywell Regulator Co. v. Terminal Constr. Corp., 41 N.J. 500, 197 A.2d 557 (1964). Three

other cases which the plaintiff has cited, National State Bank of Newark v. Terminal Constr. Corp., 217 F.Supp. 341 (D. N.J.1963), aff'd 328 F.2d 315 (3 Cir. 1964); United States for Use and Benefit of Fogle v. Hal B. Hayes & Associates, 221 F.Supp. 260 (N.D.Cal.1963), and United States for Use and Benefit of Robertson Lumber Co. v. Cedric Sanders Co., 223 F.Supp. 435 (D.N.D.1963), add little force to its argument. All three concerned notice provisions of the Capehart bond. The New Jersey federal case also raised the question of the necessity of bringing the action in the name of the United States, although the court there did say, p. 351 of 217 F.Supp., "To this extent the two acts should be interpreted together, and this court will do so except in those cases where the Miller Act, or the cases decided under it, are contradicted by the Capehart Act, the cases decided under it, or the terms of the bond". The plaintiff's final case, Northwest Lumber Sales, Inc. v. S. S. Silberblatt, Inc., 211 F.Supp. 749 (E.D.Mo.1962), concerned itself primarily with what was felt to be a question of venue. None of these issues is present here.

This leaves us with the last of the plaintiff's arguments, namely, the nature of the limitation issue and its suggested qualification as a procedural matter within the reach of our Robertson decision.

The plaintiff in its brief concedes that it "does not take issue with the conclusion of the District Court that the limitation provision of the Miller Act is jurisdictional in nature, since it operates upon the liability created by the same statute". In view of what we have said in Allsop and Koppers, this concession forecloses plaintiff's case. We feel, also, that a short answer to the plaintiff's position is that there is nothing, which we have been able to find, indicating a congressional intent, by the Capehart Act, to give the Secretary of Defense the power, through provisions of the payment bond, to extend the limitation period beyond that so specifically and clearly fixed by the Miller Act to which the Capehart Act refers. Whether the Secretary has the power to prescribe a period shorter than that of the Miller Act is a question we need not now decide. Neither is it necessary for us to concern ourselves with the "technical niceties of distinction between procedural and jurisdictional and substantive aspects" to which we referred in Allsop, p. 452 of 336 F.2d. See, also, United States to Use of Gibson Lumber Co. v. Boomer, 183 F. 726, 730 (8 Cir. 1910); United States ex rel. Texas Portland Cement Co. v. McCord, 233 U.S. 157, 162, 34 S.Ct. 550, 58 L.Ed. 893 (1914); Kansas City, Missouri v. Federal Pac. Elec. Co., 310 F.2d 271, 282 (8 Cir. 1962), cert. denied 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed. 2d 171 and 373 U.S. 914, 83 S.Ct. 1297, 10 L.Ed.2d 415.

We observe, finally, that there are certain desirable practical results and an appealing equality of treatment which flow from the conclusion we reach. The period specified by the statute is, of course, to be presumed as known by all suppliers. It treats each one equally by giving it a like limitation period, i. e., one full year after supplying the last of its labor or material. It does not, therefore, favor earlier suppliers with a longer time in which to sue, as would be the case if the limitation period is to be measured, as the bond would have it, from the date the prime contractor ceases its work. Further, mere reference to its records enables a supplier to determine exactly when its limitation period begins and when it ends; it need not resort to an investigation of the prime contractor's activity. Each of these factors has the same appeal for a Capehart situation as for a Miller situation. Both were noted when the 1959 amendment to the Miller Act, P.L. 86–135, § 1, 73 Stat. 279, was under consideration by the Congress. Senate Report No. 551 and House Report No. 351, 86th Cong., 1st Sess., 2 U.S.Code Congressional and Administrative News, 86th Cong., 1st Sess., 1959, pp. 1995–2000. Both were emphasized by the Comptroller General and by the legislative committees. Both, we think, are of significance.

Affirmed.