TROPICAIR MANUFACTURING CORPORATION, Plaintiff and Appellant, *v.* THE COITE SOMERS CO., INC. and THE CONTINENTAL CASUALTY CO., Defendants and Appellees.

No. R-67-316. · Decided June 3, 1968.

*Miranda, Cardenas & Gallardo* and *A. Arana Torrós* for appellant. *Ramírez, Segal & Latimer* for appellee The Continental Casualty Company.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The Coite Somers Company and the Continental Casualty Co., as principal and surety, respectively, furnished a bond to secure the payment of the materials to be used and labor to be employed in the performance of a contract for the construction of residences for members of the Armed Forces in Fort Buchanan. Said bond was furnished as required by the Capehart Act, 42 U.S.C. § 1594, L. 1955 c. 783, 69 Stat. 651, which in its pertinent part provides that:

"Any such contract [for the construction of housing on lands owned or leased by the United States for the purpose of providing suitable living accommodations for military personnel] shall provide for the furnishing by the contractor of a performance bond and a payment bond [for materials and labor] with a surety or sureties satisfactory to the Secretary of Defense, or his designee, and the furnishing of such bonds shall be deemed a sufficient compliance with the provisions of section 270a of

Title 40, and no additional bonds shall be required under such section."

■ The Miller Act, 40 U.S.C. § 270 (a) *et seq.*, to which the transcribed provision refers, is a statute of a general character which requires the furnishing of bonds in every contract for the construction, alteration or repair of any federal public building or public work.[1] Byrne and Costello, *The Evolution of Coverage Under the Miller Act*, 28 Fordham L. Rev. 287 (1959); Stickells, *Bonds of Contractors on Federal Public Works—The Miller Act*, 36 B.U.L. Rev. 499 (1956). Its § 270b (b) expressly provides that every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, "in the United States District Court for any district in which the contract was to be performed and executed, *and not elsewhere*, irrespective of the amount in controversy. . . ." (Italics ours.)

The determination of the proper court to take cognizance of the claim of a materialman against the contractor of a Capehart project is raised in this petition for review. A local corporation, Tropicair Manufacturing Corporation, brought an action against The Coite Somers Company, for materials furnished for the contract identified as F.H.A. 056-81007, for the construction of residential units in Fort Buchanan. The defendant moved for the dismissal alleging that jurisdiction corresponded to the United States District Court for Puerto Rico, exclusively. It was thus held by the trial court. We agreed to review.

---

[1] Similar legislation was adopted in Puerto Rico, Act No. 388 of May 9, 1951, 22 L.P.R.A. §§ 47–58, *Jiménez y Salellas, Inc.* v. *Maryland Cas. Co.*, 92 P.R.R. 200, 205 (1965), and in a certain way, Act No. 111 of June 22, 1961, 29 L.P.R.A. §§ 195–206. See, as to bonds in public works, *Ferrer* v. *Alliance Company of P.R., Inc.*, 93 P.R.R. 1 (1966); *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.*, 90 P.R.R. 719 (1964); *Cristy & Sánchez* v. *Commonwealth*, 84 P.R.R. 226 (1961).

The interaction of the Miller and Capehart Acts in relation to bonds furnished in housing projects for military personnel has been object of consideration by the federal courts, there arising an unreconcilable conflict among different appellate courts as to their applicability.

In *United States* v. *Harrison and Grimshaw Construction Co.*, 305 F.2d 363 (10th Cir. 1962), it was held that the Miller Act did not apply to the Capehart bonds, it being alleged that: (a) the construction of housing units under the Capehart Act is not "a public building or public work of the United States," since it is a project built by a private entity with private funds at private risk, and the eventuality that title will vest in the United States upon completion of contract does not make the project a public work; (b) originally, the Capehart Act contained no provision for a bond, and it is by the 1956 amendment, copied in the first paragraph of this opinion, that such bond is required, which constitutes a congressional recognition of the peculiar characteristics of the Capehart projects; (c) the amendment merely states that the furnishing of such bonds was a sufficient compliance with said Act, "it did not say that the provisions of the Miller Act apply to such bonds" (at p. 367); (d) the administrative construction, contemporaneous with the approval of the 1956 amendment contained in the regulation found at 24 C.F.R. § 292a.27, affirms—by naming the mortgagor and mortgagee as joint obligees—the private nature of the project; (e) contrary to the Miller Act, which intends to protect, by means of the bond, labor and material suppliers in substitution of the statutory lien applying to private works, the Capehart Act recognizes the possibility of a lien under the state law which authorizes it. By virtue thereof the contractual clauses of notice prior to the filing of judicial action on the provisions of the Miller Act in that matter were enforced. Annotations in 49 Va. L. Rev. 174 (1963) and 111 U. Pa. L. Rev. 1014 (1963).

*Continental Casualty Company* v. *United States,* 305 F.2d 794 (8th Cir. 1962), likewise holds that Capehart projects do not constitute federal construction programs in the conventional sense, as evidenced by the private financing of the housing and the joint administration thereby by the Department of Defense and the Federal Housing Administration, but rather sui generis. It echoes the statement in *Harrison* to the effect that if Congress had intended for the procedural provisions of the Miller Act to apply, it would have said so. It likewise calls attention to the administrative interpretation and intervention of the agencies charged with enforcing the public policy, particularly in the drafting of the form of the bond.[2] See, also, *Northwest Lumber Sales, Inc.* v. *S. S. Silberblatt, Inc.,* 211 F.Supp. 749 (E.D. Mo. 1962); *United States* v. *Travelers Indemnity Co.,* 215 F.Supp. 455 (N.D. Mo. 1963).

*Continental Casualty Co.* v. *Allsop Lumber Co.,* 336 F.2d 445 (8th Cir. 1964); *Koppers Company* v. *Continental Casualty Company,* 337 F.2d 499 (8th Cir. 1964), and *Autrey* v. *Williams and Dunlap,* 343 F.2d 730 (5th Cir. 1965), assume a different position and decide that the bonds in Capehart projects are covered by the Miller Act. For that purpose it is held that Capehart projects are "private works"; these cases also invoke the legislative history and purpose behind the approval of both statutes, the variances in state law; and the convenience of maintaining a uniform interpretation in view of the common characteristics of these con-

---

[2] The model for Capehart bonds prepared by the Federal Housing Administration, form No. 2452 C.P., provides that:

"4. No suit or action shall be commenced hereunder by any claimant,

 (a) .  .  .  .  .  .  .  .

 (b) .  .  .  .  .  .  .  .

 (c) Other than in a State court of competent jurisdiction in and for the county or other political subdivision of the State in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated and not elsewhere."

struction projects and the need for avoiding multiple litigation.

■ We are conscious that the problem we are confronting is one of construction of the federal law. In the absence of a final determination by the United States Supreme Court,[3] and without it necessarily implying an adhesion to the reasonings set forth by the federal intermediate courts, we believe that the wisest judicial policy for Puerto Rico—the exceptional character of federal jurisdiction—is not to bar access to our courts to local laborers and materialmen who are beneficiaries of the bonds furnished in Capehart projects. On the other hand, we are not depriving them from resorting to the federal court, if they so choose, for all we are indicating is the concurrence of jurisdiction,[4] and on the other hand, we are not departing from the trajectory unanimously followed by state courts in considering similar situations. *Allsop Lumber Co.* v. *Continental Casualty Co.*, 385 P.2d 625 (N.M. 1963); *Ireland's Lumber Yard* v. *Progressive Contractors*, 122 N.W.2d 554 (N.D. 1963); *Minneapolis-Honeywell R. Co.* v. *Terminal Const. Corp.*, 197 A.2d 557 (N.J. 1964); *B. C. Richter Contracting Co.* v. *Continental Casualty Co.*, 41 Cal. Rptr. 98 (1964).

---

[3] Notwithstanding the existence of this conflict in construction, the United States Supreme Court has not consented to review the question in order to establish the federal rule. *Miles Lumber Co.* v. *Harrison & Grimshaw Construction Co.*, 371 U.S. 920 (1962); *Robertson Lumber Co.* v. *Continental Casualty Co.*, 371 U.S. 922 (1962).

[4] We cannot overlook the provision contained in 28 U.S.C. § 1352, which grants concurrent jurisdiction in state courts of any action on bonds executed "under any law of the United States," footnote 3 in *National State Bank of Newark* v. *Terminal Const. Corp.*, 217 F.Supp. 341 (N.J. 1963), *cf.* 328 F.2d 315 (3d Cir. 1964), the purpose of which was to eliminate the requirements of amount and diversity of citizenship to resort to the federal courts in such cases. See *Koppers Company* v. *Continental Casualty Co.*, 337 F.2d 499 (8th Cir. 1964); *Continental Casualty Co.* v. *Allsop Lumber Co.*, 336 F.2d 445 (8th Cir. 1964); *B. C. Richter Contracting Co.* v. *Continental Casualty Co.*, 230 Cal. App.2d 491 (1964).

The judgment rendered by the Superior Court, San Juan Part, on September 12, 1967, will be reversed and the case remanded for further proceedings.